UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANIE VANCEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-01910-SEB-DKL |
| | ) | |
| UNICARE LIFE INSURANCE | ) | |
| COMPANY, FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before us are cross motions for summary judgment.  Plaintiff Janie Vancel filed a Motion for Summary Judgment [Dkt. No. 36] to which Defendants Ford Motor Company ("Ford") and UniCare Life & Health Insurance Company ("UniCare") responded and moved for summary judgment in their favor [Dkt. No. 45].  Plaintiff has not responded to Defendants' motion for summary judgment and the time for doing so has passed.  For the following reasons, we GRANT summary judgment in favor of UniCare Life Insurance Company and the Ford Motor Company and against Janie Vancel.

**Facts[1]**

Neither party disputes the facts presented by the opposing party.  Plaintiff seeks a declaration that the death of her husband, Michael Vancel, was an accident within the scope of coverage provided in an Accidental Death Benefit policy issued to Mr. Vancel.  Ford

---

[1] The parties agreed in the Case Management Plan that our review would be based on the governing insurance policy and plan and the administrative record.

and UniCare rejoin that Mr. Vancel's death was not an accident as defined by the Policy and, as a result, Ms. Vancel is not entitled to benefits under the policy.

Mr. Vancel was a full-time employee for Ford and a participant in Ford's Life and Accidental Death and Disability Plan (the "Plan"). The Plan provides benefits through a group insurance policy issued by UniCare, Group Policy Number GI-GCC (the "Policy"). The Policy provides, among other things, accidental death and dismemberment benefits for its eligible participants. Ms. Vancel is a named beneficiary of the Policy.

Ford is the Plan sponsor and administrator while UniCare insures the Policy, evaluates claims, and pays benefits due to participants as set forth in the terms of the Policy and Plan. If a claimant is denied benefits and appeals that decision, the UAW-Ford Group Life and Disability Appeal Committee (the "Appeal Committee'") reviews the denial of benefits.

The Policy contains the following relevant provision:

**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**

**Accidental Death Benefit**

The Insurer will pay a benefit if your death occurs under these conditions:

1. the death is a result of your accidental bodily injury; and
2. you were insured by this coverage at the time of such injury and at the time of loss; and
3. the death occurred within 2 years of the injury.[2]

---

[2] It is undisputed that Mr. Vancel was insured at the time of injury (prong 2) and that his death occurred within two years of the injury (prong 3). [Dkt. No. 46 at 4, n.4.] It is also undisputed that Janie Vancel is a named beneficiary under the Policy. [Dkt. No. 37 at 3, ¶ 7.] The only issue to be resolved in this case is whether Mr. Vancel's death was the result of accidental bodily injury (prong 1). [Dkt. No. 46 at 4, n.4; Dkt. No. 37 at 3, ¶ 7.]

[Policy at 27.]  The term "accident" is defined by the Policy as "an injury caused by accidental bodily harm."  [*Id.* at 11.]  Relevant to any entitlement to the above benefits are several exclusions, including "any death or loss caused wholly or partly, directly or indirectly by . . . disease or bodily or mental infirmity, or medical or surgical treatment thereof."  [*Id.* at 29.]  The Plan contains essentially the same eligibility and exclusionary language as the Policy.  [Group Life and Disability Insurance Plan ("Plan") at § 10 (Administrative Record ("AR")[3] at 1191-93).]

In response to his complaints of right-side pain, Mr. Vancel had a CT scan performed on January 7, 2013, which revealed cancerous tumors on both of his kidneys. "After reviewing all therapeutic options, risks and benefits including, but not limited to bleeding, infection, damage to adjacent organs, open conversion, removal of kidney, urinary leak, [Mr. Vancel] elected for the [robotic-assisted surgery]", which took place on January 28, 2013.  [AR at 192-98.]  After the surgery, Mr. Vancel's surgeon, Dr. Jason Sprunger, reported that Mr. Vancel "tolerated the procedure well" and "[t]here were no complications."  [*Id.*]  Mr. Vancel "was taken to the recovery room in stable condition" at 10:35 am.  [*Id.* at 192-93.]

While in the recovery room, Mr. Vancel's condition was monitored by the hospital staff who administered medication in consultation with Dr. Sprunger.  [AR 184, 190, 196-98.]  Over time, Mr. Vancel's blood pressure decreased and he became tachycardic (increased heartrate).  Initially believing that Mr. Vancel's low blood pressure was caused

---

[3] As used throughout this order, "AR" refers to Ford's submission of the Administrative Record found at Docket Numbers 42-6 through -5.

by blood pressure medication his patient had taken that morning, Dr. Sprunger had fluids administered, but did not return to Mr. Vancel's bedside immediately. [*Id*. at 184, 190, 197-98.] When Mr. Vancel's condition did not improve, Dr. Sprunger returned to treat him in person and ordered a hemoglobin test to determine if Mr. Vancel was experiencing internal bleeding. [*Id.* at 184, 190.] At 1:50 p.m., before the hemoglobin test results were back, Mr. Vancel became unresponsive and hospital staff began CPR, administered medication, and began a blood transfusion. [*Id.* at 185, 190, 197.] When Mr. Vancel did not respond to CPR, Dr. Sprunger returned him to the operating room to "explore the kidney that [was] operated on and see if there could be any halting of the bleeding." [*Id.* at 191]. During these efforts, Dr. Sprunger removed Mr. Vancel's entire left kidney and a blood clot, but Mr. Vancel remained unresponsive and was finally pronounced dead on January 28, 2013 at 3:12 pm. [*Id.* at 185, 191, 197-98.]

Mr. Vancel's death certificate describes the "chain of events – diseases, injuries, or complications – that directly caused [his ] death" as follows:

A. PT UNDERWENT UNCOMPLICATED LEFT ROBOTIC PARTIAL NEPHRECTOMY FOR RENAL MASS
   Due to (or As A Consequence Of)
B. PT WAS TAKEN TO RECOVERY ROOM AT WHICH TIME HE WENT INTO CARDIOPULMONARY ARREST AND CPR WAS INITIATED
   Due to (Or As A Consequence Of)
C. PT WAS TAKEN BACK TO OR AND FULL NEPHRECTOMY WAS PREFORMED WHILE STAFFING CONTINUED TO PREFORM CPR
   Due to (Or As A Consequence Of)
D. TIME OF DEATH WAS CALLED AT 312 WHEN PT FAILED TO RESPOND TO ALL SURGICAL AND MEDICAL INTERVENTION

[Death Certificate, Dkt. No. 37-6.] Mr. Vancel's "Manner of Death" was recorded as "Natural" as opposed to by "Accident."

4

```
33. Manner Of Death:
☒ Natural  ☐ Homicide  ☐ Accident  ☐ Pending Investigation
☐ Suicide  ☐ Could Not Be Determined
```

On January 25, 2015, Ms. Vancel, as the beneficiary of Mr. Vancel's Policy, filed a claim with UniCare to seek payment of the accidental death benefits.  A little over one week later, on February 3, 2015, acting on behalf of UniCare, Dr. John Wright considered whether Ms. Vancel's benefits claim was covered under the Policy, concluding that Mr. Vancel's death appeared "to be related to medical complications following a partial and subsequent total surgical removal of his left kidney" and that "[t]here is no evidence that an accident or dismemberment played a role in the death of Mr. Vance[l]."  [AR at 3.] UniCare denied Ms. Vancel's claim by letter dated February 4, 2015 on the grounds that Mr. Vancel's death did not result from an injury due to a covered accident as defined in the Policy.  He informed Ms. Vancel of her right to appeal UniCare's determination, which she did on March 17, 2015.

In her appeal, Ms. Vancel argued that her husband's death was the "result of the negligence of the physicians and staff at the hospital and not due to any underlying disease or the treatment thereof."  [Dkt. No. 37-12 at 2 (emphasis in original).]  It was (and is) Ms. Vancel's position that a death resulting from medical negligence is an accident and Mr. Vancel's death is therefore covered under the Policy.  The Appeal Committee disagreed, denying her appeal on August 3, 2015.  [AR 449-50.]  In denying her claim, the Appeal Committee acknowledged Ms. Vancel's position; however, upon review of Mr. Vancel's medical history, death certificate, and Ms. Vancel's appeal letter, concluded that "Mr.

Vancel's death was not a result of an accident as defined by the [Policy], and therefore Mr. Vancel's family is not eligible for [Accidental Death] benefits." [*Id.*] Ms. Vancel brings her claim for accidental death benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA").

### Summary Judgment Standard

Summary judgment is appropriate when the record before the Court establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id.* at 255. When, as in this case, the parties have filed cross-motions for summary judgment, "'we construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made.'" *Cavin v. Home Loan Center, Inc.*, 531 F.3d 526, 528-29 (7th Cir. 2008) (quoting *Premcor USA v. Am. Home Assurance Co.*, 400 F.3d 523, 526 (7th Cir. 2005)). However, neither the "mere existence of some alleged factual dispute between the parties," nor the existence of "some metaphysical doubt as to the material facts," will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000) (internal citations omitted).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id*. at 325; *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *Celotex,* 477 U.S. at 322*; Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).

Courts are often confronted with cross-motions for summary judgment, as is the case here, because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "'In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard.'" *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 902 (S.D. Ind. 2009) (quoting *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475 (D.Md.1998)). "When evaluating each side's motion the court simply 'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Morgan v. Fennimore*, Cause No. 1:09-cv-399-SEB-TAB, 2010 WL 5057418, at *1 (S.D. Ind. Dec.

3, 2010) (quoting *Metro. Life Ins. Co. v. Johnson,* 297 F.3d 558, 561–62 (7th Cir. 2002)

(quoting *Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir.1998))).

## ERISA Standard of Review

Ms. Vancel's claim is reviewed pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA").  Plaintiff contends that we should review Defendant's

denial of benefits under a *de novo* standard as opposed to an arbitrary and capricious

standard, because the Plan did not give the administrator discretionary authority.  [Dkt. No.

37 at 6-7.]  We reject Plaintiff's position for two reasons, to wit, the parties have previously

agreed that an arbitrary and capricious standard of review applies here and the Plan and

Policy expressly give the administrator discretionary authority to construe the Policy and

adjust claims.  [Dkt. No. 20 (Case Management Plan) at § IV(A) ("[T]he administrator's

decision should be reviewed under an arbitrary and capricious standard of review.").]

Without a doubt, the Plan expressly grants the Appeal Committee discretionary

authority to determine eligibility for benefits and to construe the terms of the Plan.  [Plan

at § 23 ("After review of an appeal, disputed benefits under the applicable Plan will be paid

only if the Appeal Committee decides in its discretion that the claimant is entitled to them

under the terms of the Plan."); *id.* ("Any action of the Appeal Committee (within the scope

of its functions) shall be final and conclusive upon any claimant . . . subject only to the

arbitrary and capricious standard of judicial review."); AR 2790 (Summary Plan

Description) ("The Insurance carrier has discretionary authority to construe, interpret,

apply, and administer the Plan.  Decisions of the Insurance carrier and final and conclusive,

8

and are only subject to the arbitrary and capricious standard of judicial review.").] Plaintiff does not refute these facts.

In circumstances such as these, we review the Appeal Committee's decision under an arbitrary and capricious standard review, which has been described as the "least demanding form of judicial review". *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005). When reviewing an administrator's decision under the arbitrary and capricious standard, the decision will be overturned only if it is downright unreasonable and a decision will not be overturned if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem." *Militello v. Cent. States, Se. and Sw. Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004) (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (internal quotation marks omitted)). It is "not our function to decide whether we would reach the same conclusion as the Plan or even rely on the same authority." *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quotation and citation omitted). "If the administrator made an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, then that decision is final." *Id.* (citation omitted).

## Analysis

The issue before us for determination is whether the Appeal Committee made a reasonable, reasoned conclusion that Mr. Vancel's death was not an accident as defined by

9

the Policy and, as a result, Ms. Vancel is not eligible for benefits under the Policy.  We can make short work of the parties' dispute because the Seventh Circuit has, in the clearest of terms, concluded that medical mishaps, whether caused by negligence or not, are *not* accidents covered by an accidental death insurance policy.  *Senkier v. Hartford Life & Acc. Ins. Co.*, 948 F.2d 1050, 1054 (7th Cir. 1991); *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 633 (7th Cir. 2010) (relying on *Senkier* to conclude that because the death was the cause of an expected complication during medical treatment, it was not an accident under the terms of the accidental death policy).  Plaintiff, who failed to respond to Defendants' Motion for Summary Judgment, has not provided any arguments that would distinguish *Senkier* or *Sellers* from the facts before us and we see no reason to deviate from the Seventh Circuit's reasoning and conclusions in those cases.

The governance of pension and employee benefit trusts, and specifically, accidental death insurance policies, has been frequently considered by the Seventh Circuit, resulting in a body of clear and controlling law.  In *Senkier*, the decedent suffered from Crohn's Disease and was admitted to the hospital where a catheter was inserted to deliver nourishment intravenously.  948 F.2d at 1051.  The patient died suddenly a few days later when the catheter became detached and entered her heart, puncturing it.  *Id.*  The accidental death insurance policy expressly excluded from coverage death due to "sickness or disease" as well as "medical or surgical treatment or a sickness of disease."  *Id.*  The Court drew two unambiguous conclusions which are relevant and controlling here: "a policy of accident insurance does not reach iatrogenic injuries" and "the presence of negligence or other fault does not convert a medical or any other mishap into an accident."  *Id.*  Although

10

injuries and death resulting from medical procedures are "accidental in the sense of unintended and infrequent[,] they are not 'accidents' as the term is used in insurance policies for accidental injuries." *Id.* at 1051-52.

The unfortunate circumstances of Mr. Vancel's death fall squarely within the rules of law pronounced in *Senkier*. By Ms. Vancel's own admission, her husband's death was caused by the alleged inattentiveness of his physician and the hospital staff. [Dkt. No. 37 at 9 ("The real cause of Michael's death was a lack of communication from the nurses to the doctors in his post-operative treatment."); *id.* ("Michael's death was caused wholly by miscommunication between physicians and nursing staff and general negligence and delay during his post-operative care.").] The record unequivocally demonstrates that Mr. Vancel's death was caused by internal bleeding resulting from his kidney surgery. Specifically, his death certificate describes Mr. Vancel's manner of death as natural and his cause of death as the consequence of a chain of events beginning with what was thought to be an uncomplicated surgery, followed by cardiopulmonary arrest in the recovery room, subsequent surgery, and then death after failing to respond to surgical and medical intervention. [Death Certificate.]

Mr. Vancel's death is not covered under the Policy because it was not an "accident" as defined by the Policy ("an injury caused by accidental bodily harm"), and, even if it were an accident, his death was caused, in whole or in part, directly or indirectly, by his kidney surgery, which is expressly excluded from Policy coverage. *See Whetsell v. Mut. Life Ins., Co. of N.Y.*, 669 F.2d 955, 956 (2d Cir. 1982); *Reid v. Aetna Life Ins. Co.*, 440 F. Supp. 1182, 1184 (S.D. Ill. 1972); *Litman v. Monumental Life Ins. Co.*, 682 N.E.2d 135,

11

140 (Ill. Ct. App. 1997) (Such exclusionary provisions have excluded from coverage deaths caused by various mishaps occurring during the course of medical treatment.).  The alleged negligence of Dr. Sprunger and/or the hospital staff does not alter this conclusion.  If we were to conclude that Mr. Vancel's death was an "accident" because it resulted from medical negligence, we would effectively convert his Accidental Death insurance policy into one for medical malpractice, which the Seventh Circuit instructs us not to do.  *See Senkier*, 948 F.2d at 1054.  UniCare delivered an informed, reasoned decision in denying Ms. Vancel's claim based on a review of the facts; its rejection of Ms. Vancel's claim was based on the Policy language opposing her contention that the medical providers' negligence caused her husband's death.

Ms. Vancel argues that her husband's death was not caused by treatment of his kidneys through surgery, but rather that it was the cessation of treatment after his surgery that caused his death.  [Dkt. No. 37 at 13.]  In advancing this theory, Ms. Vancel relies upon a Missouri Court of Appeals decision, *Mayfield v. Metropolitan Life Ins. Co.*, 585 S.W.2d 163 (Mo. App. 1979), arguing that post-surgical recovery is not "medical or surgical treatment" that would be excluded from an accidental death policy but a cessation of treatment which is not subject to the exclusion.  [*Id.*]  As Defendants note, the *Mayfield* decision is not binding on this court, but even more significantly, the Seventh Circuit recognized *Mayfield* as contradicting "numerous cases" classifying a "mishap in the course of treatment" as "part of the treatment itself" and not an accident.  *Senkier*, 948 F.2d at 1051 (citing, among other decisions, a Southern District of Illinois case affirmed without opinion by the Seventh Circuit, *Reid v. Aetna Life Ins. Co.*, 440 F. Supp. 1182 (S.D. Ill.

12

1977)).  The Seventh Circuit has rejected the distinction urged by Ms. Vancel that Mr. Vancel's surgery and recovery are separate from a cessation of post-operative care through alleged neglect by the medical staff.  The alleged neglect by Dr. Sprunger and the hospital staff occurred during Mr. Vancel's post-operative recovery and was part and parcel of his medical treatment, and thus not an accident under the terms of the Policy and controlling Seventh Circuit law.

## Conclusion

We conclude that the Appeal Committee's denial of benefits to Ms. Vancel was neither arbitrary nor capricious and that the Appeal Committee's decision was well-reasoned and supported by the evidence; indeed, we concur with the Appeal Committee's determination that Mr. Vancel's death, while tragic and accidental in the sense that it was unintended, was not an accident pursuant to the Policy and therefore Ms. Vancel is not entitled to benefits under the Policy.  Accordingly, we GRANT Defendants' Motion for Summary Judgment [Dkt. No. 44] and DENY Plaintiff's Motion for Summary Judgment [Dkt. No. 36].  Judgment shall enter accordingly.

Date:   3/1/2017

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kevin Patrick Farrell
CLINE FARRELL CHRISTIE & LEE, PC
kevin@cfcl-law.com

Kyle Christie
CLINE FARRELL CHRISTIE & LEE, PC
kyle@CFCL-law.com

Blaire Bruns Johnson
EDISON MCDOWELL &
HETHERINGTON LLP
blaire.johnson@emhllp.com

Thomas F.A. Hetherington
EDISON MCDOWELL &
HETHERINGTON LLP
tom.hetherington@emhllp.com

Kevin C. Schiferl
FROST BROWN TODD LLC
kschiferl@fbtlaw.com

Naima L. Farrell
GIBSON, DUNN & CRUTCHER LLP
nfarrell@gibsondunn.com

Thomas M. Johnson, Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306

Eugene  Scalia
GIBSON, DUNN & CRUTCHER, LLP
escalia@gibsondunn.com

Kristopher N. Kazmierczak
KATZ & KORIN P.C.
kkaz@katzkorin.com

Sally F. Zweig
KATZ & KORIN P.C.
szweig@katzkorin.com